IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DONNA CAVIN, individually and on )
behalf of all others similarly )
situated, )
                              )
               Plaintiff, )
    v.                     )            1:18CV995
                              )
SMITH DEBNAM NARRON DRAKE )
SAINTSING & MYERS, LLP, )
                              )
               Defendant. )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Smith Debnam Narron Drake Saintsing & Myers, LLP's Motion to Dismiss [Doc. #8]. Plaintiff Donna Cavin filed this putative class action alleging that the collection letter Smith Debnam Narron Drake Saintsing & Myers, LLP ("Smith Debnam") sent Cavin violated the Fair Debt Collection Practices Act ("FDCPA"). (See generally Compl. [Doc. #1].) Smith Debnam has moved to dismiss the action because it contends the letter complied with the FDCPA requirements. For the reasons explained below, the motion is granted.

I.

As alleged in the Complaint, Cavin received a letter dated June 7, 2018, from Smith Debnam purporting to collect a balance owed on Cavin's Belk Rewards Card. (Compl. ¶¶ 18-22; Letter from Christina McAlpin Taylor to Donna Cavin

(June 7, 2018), Ex. A to Compl. ("Letter") [Doc. #2].) The body of the Letter reads as follows:

> This is to notify you that Synchrony Bank has retained this law firm to collect its claim against you for the balance owing on your Belk Rewards Card account. We assume this to be a valid debt unless you contact us within 30 days of your receipt of this letter to dispute all or any part of the balance indicated. If you notify us in writing of any dispute with regard to this debt within 30 days of receiving this letter, we will obtain verification of the debt or a copy of a judgment against you, if any, and mail it to you. Upon your written request within 30 days following your receipt of this letter, we will provide you with the name and address of the original creditor, if different from the current creditor. <u>This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose</u>.
>
> If you have made payments to reduce the amount stated, please advise the amount paid, to whom it was paid, and when payment was made. It is our desire to give you an opportunity to resolve this claim before legal action becomes necessary, and we are willing to discuss this matter with you or your attorney. Please note, this account is now handled from our office, all contact and payments <u>must</u> come through us. **If you wish to discuss this claim, please call Tonya Williamson at 919/250-2141 at extension 2236 or the toll-free number above**.
>
> **If this account is not disputed, we request payment be sent to our office, payable to Synchrony Bank for the balance due – do not mail your payments to Belk Rewards Card**. If payment is not received, legal action may become necessary. It is important that this claim be paid or we receive a reply from you in connection with this account. Otherwise, we will assume that you do not wish to resolve this matter amicably.

Cavin focuses on the first eight words in the second sentence of the first paragraph: "We assume this to be a valid debt . . . ". (Compl. ¶ 24.) She alleges that Smith Debnam's assumption that the debt was valid prior to the expiration of the validation period was deceptive and misleading and overshadowed her rights,

2

"attempted to put added pressure" on her, and "provided less of a reason to believe that disputed [sic] the alleged debt would have any impact." (Id. ¶¶ 25, 26, 29.) Cavin further alleges that this "inaccurate validation notice" "depriv[ed] her of information to which she was statutorily entitled to receive" and "caus[ed] her to be unaware of how to effectively dispute her debt." (Id. ¶ 29.) Accordingly, Cavin contends that Smith Debnam violated 15 U.S.C. § 1692g by "[f]ailing to accurately convey the validation notice" and "[o]vershadow[ing] [her] validation rights", (id. ¶¶ 40-43), and 15 U.S.C. § 1692e(10) "by providing a deceptive and misleading validation notice", (id. ¶¶ 44-48). Smith Debnam responds that the Letter "was accurate and conformed with the requirements of section 1692g" and, therefore, was not misleading under § 1692e.

II.

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual

3

allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). However, when a complaint states facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in her favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level". Id. at 555.

III.

Facing "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy" and "inadequate" laws to protect consumers, Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to

4

promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

"To effectuate this purpose, the FDCPA regulates interactions between consumers and debt collectors by imposing affirmative statutory obligations upon debt collectors and proscribing certain abusive conduct." Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 388-89 (4th Cir. 2014). As is relevant here, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" such as "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . ." 15 U.S.C. § 1692e(10). A debt collector must also provide a consumer written notice containing, among other information, "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector". 15 U.S.C. § 1692g(a)(3). According to the Fourth Circuit Court of Appeals, "the FDCPA's legislative history suggests that the purpose of the validation notice requirement was to 'eliminate the recurring problem of debt collectors dunning[1] the wrong person or attempting to collect debts which the consumer has already paid.'" Russell, 763 F.3d at 394 (added emphasis removed) (quoting S. Rep. No. 382, 95th Cong., at 4 (1977)). In other words, "Congress included the debt validation provisions in order to guarantee

---

[1] To dun is "[t]o demand payment from (a delinquent debtor)". *Dun*, Black's Law Dictionary (11th ed. 2019).

5

that consumers would receive adequate notice of their legal rights." Miller v. Payco-Gen. Am. Credits, Inc., 943 F.2d 483, 484 (4th Cir. 1991).

"[T]he notice Congress required must be conveyed effectively to the debtor." Id. "[T]o be effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency." Id. (internal quotations omitted) (finding the form notice "both contradicted and overshadowed the required validation notice, preventing the notice's effective communication" where the face of the form demanded "IMMEDIATE FULL PAYMENT", directed the consumer to "PHONE US TODAY", and emphasized the word "NOW", information that "flatly contradict[ed] the [notice] information contained on the back" of the form). The notice "must be placed in such a way to be easily readable, and must be prominent enough to be noticed by an unsophisticated consumer." United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 139 (4th Cir. 1996) (affirming holding that notices not only violated § 1692g(a) because the deadlines for payment conflicted with that in the validation notice, but also because the smaller, less visible validation notice, printed on the back, was overshadowed by the "bold commanding type of the dunning text").

The parties agree that analysis of compliance with the FDCPA must be from the perspective of the least sophisticated consumer, see Russell, 763 F.3d at 394-95 (applying the least sophisticated consumer standard to § 1692e); Nat'l Fin. Servs., Inc., 98 F.3d at 136, 139 (explaining the importance of the least

6

sophisticated consumer standard in the context of § 1692e and referring to "an unsophisticated consumer" when reviewing a validation notice's compliance with § 1692g). (See Mem. in Supp. of Def.'s Mot. to Dismiss ("Mem. in Supp.") at 3 [Doc. #9]; Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Mem. in Opp'n") at 3-4 [Doc. #13].) "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Nat'l Fin. Servs., Inc., 98 F.3d at 136 (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)). "While protecting naïve consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Id. (citing Clomon, 988 F.2d at 1319).

"[T]here is no requirement that a debt collector quote the language of § 1692g(a) verbatim." Vitullo v. Mancini, 684 F. Supp. 2d 747, 756, 756 n.11 (E.D. Va. 2010) (citing Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 365-66 (2d Cir. 2005) & Jang v. A.M. Miller & Assocs., 122 F.3d 480, 484 (7th Cir. 1997)). Moreover, "the communications must be examined as a whole, not sentence-by-sentence, because the least sophisticated consumer standard 'does not go so far as to provide solace to the willfully blind or non-observant.'" Id. (quoting Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 299 (3d Cir. 2008)). "'Even the least sophisticated debtor is bound to read collection

7

notices in their entirety.'" Id. (quoting Campuzano-Burgos, 550 F.3d at 299) (finding the notice effectively conveys information when read in context).

The heart of the dispute here is whether Smith Debnam's present-tense statement – "We assume this to be a valid debt" – misrepresents the statute's requirement that the debt collector include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector". Smith Debnam contends that the Letter "simply provides the same information in a more direct manner" and cites to a "telling[]" case from the Eastern District of North Carolina that "upheld a similar Smith Debnam letter." (Mem. in Supp. at 5 (citing Warran v. Smith Debnam Narron Drake Saintsing & Myers, LLP, No. 7:10-CV-71-BO, 2011 WL 10858230 (E.D.N.C. Apr. 19, 2011)).) However, the lawfulness of the statement "We assume this to be a valid debt" was not before the Warran court. See generally Warran, 2011 WL 10858230. Smith Debnam also argues that it is, in fact, permitted to assume the validity of the debt because the law allows it to continue collection efforts during the thirty-day dispute period as long as those activities do not overshadow or contradict Cavin's statutory rights. (Mem. in Supp. at 5-6.)

Although Cavin does not dispute that Smith Debnam can continue collection activities during the thirty days, she vehemently contends that Smith Debnam's statement assuming the validity of the debt before the expiration of the validation period violates the FDCPA because it impermissibly overshadows her

8

right to dispute the debt. (Mem. in Opp'n at 6-11 (citing Badon v. Transworld Sys., Inc., No. 97-18, 1997 WL 149986 (E.D. La. Mar. 26, 1997), Trull v. GC Servs. Ltd. P'ship, 961 F. Supp. 1199 (N.D. Ill. 1997), Robinson v. Transworld Sys., Inc., 876 F. Supp. 385 (N.D.N.Y. 1995), Garcia-Contreras v. Brock & Scott, PLLC, 775 F. Supp. 2d 808 (M.D.N.C. 2011), and Bartlett v. Heibl, 128 F.3d 497 (7th Cir. 1997)).) However, the cases on which Cavin relies are not precedential, and their facts are distinguishable from those here.

In Badon, the debt collector had sent the plaintiff a series of letters, the first of which included the statement that the debt would be assumed to be valid unless disputed within thirty days with the successive letters notifying the plaintiff that the "[g]race period" or "federally mandated dispute period" was "about to expire". 1997 WL 149986, at *1. The court was unsure if the plaintiff was asserting "a claim that defendant violated § 1692g(a) by sending notices and letters with language which assumed that plaintiff's debt was valid", but assessed the sufficiency of the allegations nonetheless. Id. at *4. The court stated that "[a]ccording to § 1692g(a), a debt collector cannot assume the validity of a debt until 30 days have passed since the consumer received the validation notice". Id. Because "none of defendant's letters state[d] that plaintiff's debt [was] due before the 30 day dispute period", the court found that the plaintiff failed to state a claim that the "defendant violated § 1692g(a) by sending notices which assumed the debt's validity until the requisite thirty days had passed." Id. On the other hand, the plaintiffs in Trull and Robinson did

sufficiently support claims that the defendants' assumption of validity during the thirty-day dispute period violated § 1692g(a)(3). In Trull, the debt collector sent the plaintiff an initial letter dated May 23, 1995, and then a second letter dated June 13, 1995, before the dispute period expired, that stated in relevant part, "Since you ignored our previous notice, we assume this debt is correct". 961 F. Supp. at 1201 (emphasis added). The reverse side of each letter provided the requisite statutory notice of thirty days within which to dispute the debt. Id. at 1202. However, the court found that the plaintiff stated a § 1692g claim as it related to the operative language in the June 13, 1995 letter because it "contradict[ed] notice of the thirty-day period before which the debt will be assumed to be valid." Id. at 1205. Similarly, in Robinson, the debt collector sent the plaintiffs notices on July 31, 1992, August 10, 1992, August 20, 1992, and September 10, 1992. 876 F. Supp. at 391. The August 20 notice, sent before the dispute period expired, stated in relevant part, "SINCE THE VALIDITY OF THIS LONG OVERDUE ACCOUNT HAS NOT BEEN DISPUTED, IT IS NOW ASSUMED TO BE VALID." Id. (emphasis added.) The court granted the plaintiffs partial summary judgment on this § 1692g(a) claim because the "language flatly contradicts Section 1692g(a), which does not allow the debt collector to assume the validity of the debt until 30 days have passed after receipt of the validation notice." Id. The debt collectors in Trull and Robinson assumed the debt was valid during the thirty-day dispute period after they cut short that period and affirmatively asserted that the plaintiff had failed to dispute the debt.

10

Here, however, nothing in the Letter alters, cuts off, or otherwise limits Cavin's thirty-day dispute period. Instead, she is repeatedly told that she has thirty days from the date of her receipt of the Letter to dispute the debt.

The plaintiffs in Garcia-Contreras and Bartlett successfully claimed that language in their collection letters overshadowed and contradicted their rights. In Garcia-Contreras, the court found language in the first paragraph of the letter violated the FDCPA where it threatened a lawsuit "immediately", service by the Sheriff "at your home, your work, or wherever else you may be found", and the taking of the plaintiff's nonexempt property. 775 F. Supp. 2d at 819-22. Despite "the language of the second paragraph of Defendants' letter [that] track[ed] closely the statutory language in § 1692g(a)(3)-(5)", the court found that the first paragraph overshadowed and contradicted the plaintiff's rights to dispute the debt and, therefore, did not convey her rights effectively. Id. at 822. In Bartlett, the court found language in the letter violated the FDCPA where the plaintiff was told that "'if you wish to resolve this matter before legal action is commenced, you must do one of two things within one week of the date of this letter': pay $316 toward the satisfaction of the debt, or get in touch with Micard (the creditor) 'and make suitable arrangements for payment[;] [i]f you do neither, it will be assumed that legal action will be necessary.'" 128 F.3d at 499. Under the sender's signature appeared the statutory notice that the plaintiff had thirty days within which to dispute the debt. Id. Nonetheless, the court found "[t]he net effect of the juxtaposition of the one-week and thirty-day crucial periods is to

11

turn the required disclosure into legal gibberish", which is "as bad as an outright contradiction." Id. at 501. Here, the Letter contains no language similar to that in Garcia-Contreras or Robinson that contradicts or overshadows Cavin's right to dispute the debt within thirty days of her receipt of the Letter. There is no language that an unsophisticated consumer could find threatening, and there are no instructions that an unsophisticated consumer could find contradictory. Instead, as previously noted, the letter consistently notifies Cavin of her right to dispute the debt within thirty days of receipt of the Letter and invites her to call a designated individual to discuss the matter if she so chooses.

Cavin's statutory rights are easily readable and prominent enough to be noticed by an unsophisticated consumer, as the law requires. The second, third, and fourth sentences of the letter are nearly identical to the requisite statements in § 1692g(a)(3)-(5). Cavin is notified that Smith Debnam assumes the debt to be valid unless Cavin disputes all or any part of it within thirty days of the receipt of the letter and that she can notify Smith Debnam in writing within thirty days of the receipt of the letter to receive verification of the debt or a copy of the judgment against her and the name and address of the original creditor, if different from the current creditor. The second paragraph provides steps Cavin can take if she has paid towards the debt and notifies her that Smith Debnam "desire[s] to give [her] an opportunity to resolve this claim before legal action becomes necessary" and that Smith Debnam is "willing to discuss this matter with [her] or [her] attorney." In bold font, "[i]f [Cavin] wish[es] to discuss this

12

claim," the letter asks her to "please call" and gives the name and numbers to call.  In the final paragraph of the letter, Cavin is informed, in bold font, that "[i]f this account is not disputed", payment is requested to be sent to Smith Debnam's office.

In sum, the least sophisticated consumer would read this letter in its entirety and understand that she has thirty days from receipt of the letter to dispute all or any part of the debt and, if she does so in writing, Smith Debnam will provide her verification of the debt and the name and address of the original creditor if different from the current creditor.  Nothing in the letter, even the statement "We assume this to be a valid debt unless you contact us within 30 days of your receipt of this letter to dispute all or any part of the balance indicated", overshadows or is inconsistent with the requisite statutory disclosures or constitutes a false representation or deceptive means to collect a debt.  It is simply not plausible that the Letter's § 1692g(a)(3) statement "deprived [Cavin] of information to which she was statutorily entitled to receive and [caused] her to be unaware of how to effectively dispute her debt" or that Smith Debnam "attempted to put added pressure on [her] and provided less of a reason to believe that disput[ing] the alleged debt would have any impact", as she alleges.  Therefore, Cavin has failed to state a claim under either 15 U.S.C. § 1692g(a)(3) or 15 U.S.C. § 1692(e)(10).

For the reasons stated in this Memorandum Opinion, IT IS HEREBY ORDERED that Defendant Smith Debnam Narron Drake Saintsing & Myers, LLP's

13

Motion to Dismiss [Doc. #8] be GRANTED.  A judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This the 6th day of September, 2019.

/s/ N. Carlton Tilley, Jr.  
Senior United States District Judge